AZTECA CURRENCY EXCHANGE, INC., *et al.*, Plaintiffs-Appellees, *v.* THE DEPARTMENT OF FINANCIAL INSTITUTIONS *et al.*, Defendants-Appellants.

First District (4th Division)   No. 81—3041

Opinion filed January 20, 1983.

Tyrone C. Fahner, Attorney General, of Chicago (Imelda R. Terrazino, Assistant Attorney General, of counsel), for appellants.

Bossov, Lipschultz & Associates, of Chicago (Michael Sorokas, of counsel), for appellees.

PRESIDING JUSTICE ROMITI delivered the opinion of the

court:

Appellees applied for a license to operate a currency exchange. The hearing examiner, believing that it was petitioners' burden to prove that the community was not at that time being adequately served and that therefore the granting of a new license would promote the community's convenience and advantage which was not being met, held that the applicants, although completely qualified, should be denied a license since the single licensee in the area was adequately serving the community. On appeal, the circuit court reversed and ordered the commissioner to issue a license. We affirm, holding that: (1) the hearing officer applied an improper standard; and, (2) applying the proper standard, there is no evidence in the record on which the commission could deny a license.

Ninfa Martinez and Carmen Moreno (the applicants) filed an application with the Illinois Department of Financial Institutions to operate the Azteca Currency Exchange, Inc., located at 4327 West 26th Street, Chicago, Illinois. There is another existing currency exchange about six blocks east at Pulaski and 26th Street. Two others, also on Pulaski, are about a mile away. There apparently are no other currency exchanges in the entire area. There had been an additional exchange but it was voluntarily closed after being cited for various violations of Department regulations. (The hearing examiner's finding that it was closed for lack of community support is totally unsupported by any evidence in the record.) This exchange has not been replaced.

A currency exchange cannot be operated without a license granted by the Department of Financial Institutions. (Ill. Rev. Stat. 1979, ch. 16½, par. 32.) When an application is received for a license of a community currency exchange, the Director is required to investigate the needs of the community. The application is to be denied "[i]f the issuance of a license *** will not promote the convenience and advantage of the community in which the business of the applicant is proposed to be conducted." Ill. Rev. Stat. 1979, ch. 16½, par. 34.1.

At the hearing, the hearing examiner stated that the Department had stipulated all of the "routine characterizations" of the applicants were favorable. They had the financial ability, the business competence, and the character to run it. The sole question was whether it would promote the convenience and advantage of the community. The officer ruled that it was "the petitioner's burden in this case to prove that the community is not being served adequately and, therefore, the granting of a new license will promote the convenience and advantage of that community which is not now being met. If that cannot be dem-

onstrated, the burden being on the applicant, then the Director has no course but to deny the request. That's mandatory language. *** It is the petitioner's burden to prove it is not being served and that, therefore, they meet the requirement for a new currency exchange. *** [T]he burden of going forward is really on the petitioner to show the community is not advantaged, is not being met, and therefore there is a need for a new one." In his opinion, the hearing officer stated that the only issue was whether the community needed an additional currency exchange. He found, in effect, that since the existing currency exchange adequately served the community, the application should be denied. He also ruled that the fact that the community was now Spanish and the applicants were Spanish and could serve a Spanish-speaking community was irrelevant and should not be considered. The hearing officer made no findings that the granting of the license would in some way be injurious to the community or even to the existing currency exchange. The Director affirmed the ruling, specifically finding that the applicants had not refuted the Department's finding of no community need and advantage being demonstrated for the creation of a new license.

■ Prior to 1977 the Currency Exchange Act in section .01 (Ill Rev. Stat. 1975, ch. 16½, par. 30), provided that the number of community currency exchange licenses should be limited in accordance with the needs of the communities they are to serve. This section was repealed in 1977. In so doing the legislature expressly and at length found that the declaration and findings of that section had been made without any investigation and provided for preferential treatment of community currency exchanges; that the people of Illinois do not need to assure the financial stability of any business. (80th Ill. General Assembly, Report of Senate Proceedings, Third Reading of Senate Bill 447, May 26, 1977, at 102-06; Report of House Proceedings, Third Reading of Senate Bill 447, June 20, 1977, at 75.) Since the repeal of that section of the Act, it appears that the only reason for the denial of a license for a community currency exchange is to establish that its issuance would not promote the *convenience* and *advantage* of the community. The hearing examiner cannot change or modify these criteria. (*Gadlin v. Auditor of Public Accounts* (1953), 414 Ill. 89, 110 N.E.2d 234.) The *needs* of the community as opposed to its convenience are no longer the issue. The fact that the essential needs of a community are served, that people can, however inconveniently, get to a currency exchange does not show that an additional exchange would not be a convenience and advantage to its community. Thus it is clear that the hearing officer, throughout, applied an incorrect standard.

■ Normally, when an incorrect standard is applied, this court would remand the case to the administrative agency for reconsideration applying the proper standard. However, in this case there is no evidence in the record tending to show that the granting of a license to the applicants, admittedly totally qualified, would not serve the convenience and advantage of the community. Accordingly under our authority to give any judgment and make any order that should have been given (87 Ill. 2d R. 366), we affirm the judgment of the circuit court.

It is admitted and undisputed that the applicants were thoroughly qualified. There is only one other currency exchange in the near vicinity. There had been one other but that had closed after being charged with violations of the regulations. Yet the population has not decreased; to the contrary, all agreed the population had increased in the last few years although the witnesses were in disagreement as to whether this increase was only slight or about 20%. One of the Department's witnesses admitted that a new exchange would convenience some of the people in the community. A glance at the map included in the record discloses that many of the people supposedly "serviced" by the existing exchange and forced to use it for lack of another live well over eight to ten blocks from that exchange. The applicants obtained about 507 signatures of persons in the community wanting the new exchange; one of the applicants testified that everyone they approached for signatures used a currency exchange on a regular basis. On the other hand, the only objector was the owner of the other exchange; his objections were based on the contentions he adequately served the community and the population had not significantly increased.

■ The Department contends that the examiner was entitled to deny the application because a new exchange would impair the financial stability of the existing one, citing *Gadlin v. Auditor of Public Accounts* (1953), 414 Ill. 89, 110 N.E.2d 234, *Durchslag v. Smith* (1958), 14 Ill. 2d 549, 152 N.E.2d 828, and *Cohn v. Smith* (1958), 14 Ill. 2d 388, 153 N.E.2d 83. These cases, however, relied on section .01, which was part of the Act when they were decided and which required the limitation of licenses in accordance with the needs of the community. As already noted, this section has been repealed by a legislature which found there was no need to give preferential and protectionistic treatment to community currency exchanges. Furthermore, there was absolutely no evidence tending to show that the existing exchange could not survive or even would be seriously injured if the new license was granted. The sole evidence as to alleged

financial injury was that of one of the Department's employees who testified that the licensing of a new currency exchange "could possibly have an effect on the existing currency exchange." What kind of effect was not specified. This testimony which was purely a conclusion of the witness was not substantiated by any factual evidence. The owner of the existing currency exchange appeared as a witness but made no claim that another exchange would impair the financial stability of his exchange. And the hearing examiner, despite the Department's contentions, did not in fact find, unlike the auditor in *Cohn*, that a new exchange would impair the financial stability of existing exchanges. Thus, even if we were to apply the standards applicable before the repeal of section .01, there was no evidence from which the examiner could conclude either that a new exchange would impair the financial stability of the existing exchange, unlike *Cohn*, or that an area in which there were no exchanges west of Pulaski for at least a couple of miles was oversaturated with currency exchanges, unlike *Gadlin* where there were five licensed currency exchanges, a United States post office and a national bank located within one-fourth mile of the proposed location and 14 currency exchanges within one-half mile, and unlike *Durchslag* where there were four existing currency exchanges within one-quarter mile of the proposed location.

It follows from the foregoing that there is no evidence in the record from which the Director on remand could conclude that issuance of the new license would not promote the convenience and advantage of the community. Accordingly, there is no need to remand the case to the Director for reconsideration of the evidence, and we affirm the trial court's judgment ordering the Director to issue the license.

Judgment affirmed.

JOHNSON and JIGANTI, JJ., concur.