THE PEOPLE *ex rel.* NEIL F. HARTIGAN, Attorney General, Petitioner, v. ILLINOIS COMMERCE COMMISSION *et al.*, Respondents.—THE PEOPLE *ex rel.* OFFICE OF PUBLIC COUNSEL *et al.*, Petitioners, v. ILLINOIS COMMERCE COMMISSION *et al.*, Respondents.—ILLINOIS POWER COMPANY, Petitioner, v. ILLINOIS COMMERCE COMMISSION *et al.*, Respondents.

Third District   Nos. 3—90—0492, 3—90—0500, 3—90—0501 cons.

Opinion filed June 12, 1991.

Roland W. Burris, Attorney General, of Springfield (Janice Dale and Robert W. Cushing, Assistant Attorneys General, of Chicago, of counsel), for petitioner People *ex rel.* Hartigan.

Stephen J. Moore, of Office of Public Counsel, of Chicago (Stephen Fogel, of counsel), for petitioner People *ex rel.* Office of Public Counsel.

Robert L. Graham, of Jenner & Block, of Chicago, for petitioner Citizens Utility Board.

Roland W. Burris, Attorney General, of Springfield (David W. McGann, Special Assistant Attorney General, of Chicago, of counsel), for respondent Illinois Commerce Commission.

Lueders, Robertson & Konzen, of Granite City (Eric Robertson, of counsel), for respondent Illinois Industrial Energy Cooperative.

Owen E. MacBride, Allan Horwich, and Linda K. Stevens, all of Schiff, Hardin & Waite, and William J. Harte, of William J. Harte, Ltd., both of Chicago, for Illinois Power Company.

Patrick D. Welch, of Peru, for *amicus curiae.*

PRESIDING JUSTICE STOUDER delivered the opinion of the court:

Appellants, the Illinois Attorney General (No. 3—90—0492), the Office of Public Counsel and the Citizens Utility Board (OPC/CUB) (No. 3—90—0500), and appellant-appellee, the Illinois Power Company (No. 3—90—0501), appeal from an order issued by appellee, the Illinois Commerce Commission (the Commission). The appeals have been consolidated for purposes of our review. In light of our holding in *Illi-*

*nois Power Co. v. Illinois Commerce Comm'n* (1991), 208 Ill. App. 3d 779, 566 N.E.2d 1372, we set forth only those facts necessary for disposition of the issues we need resolve in this appeal.

On March 30, 1989, the Commission entered an order (referred to by the parties as the 1989 Rate Order) in which, among other things, the Commission found that Illinois Power's Clinton Nuclear Power Station (Clinton) was only 27.2% used and useful in supplying electrical service to Illinois Power's customers. Illinois Power, the Attorney General and OPC/CUB appealed from that order. On July 13, 1989, during the pendency of those appeals, Illinois Power filed a request for the rate increase which is the subject of the instant appeals.

In its request, Illinois Power proposed a 23% ($215.7 million) increase in electric rates. The Commission determined that hearings should be held concerning the propriety and reasonableness of the proposed increase. Numerous parties including the Attorney General and CUB filed petitions to intervene. The OPC filed a notice of intervention.

On June 6, 1990, the Commission entered an order (the 1990 Rate Order) granting Illinois Power a rate increase of $75,163,000. Among other things, the Commission concluded that 60.9% of Clinton was used and useful. The Commission stated that it was making the used and useful determination utilizing a methodology "very similar to the methodology the Commission adopted in the 1989 Rate Order."

On July 13, 1990, the Commission issued an amended order to correct certain errors in revenue requirement calculations brought to its attention by OPC/CUB's application for rehearing. As a result of these recalculations, the Commission determined that Clinton was 60.7% used and useful, and that Illinois Power should be granted an annual rate increase of $74,799,000. Subsequently, the parties filed their appeals with this court.

On February 8, 1991, this court filed its opinion in *Illinois Power Co. v. Illinois Commerce Comm'n* (1991), 208 Ill. App. 3d 779, 566 N.E.2d 1372, reversing and remanding the 1989 Rate Order. We held among other things that the Commission erred in utilizing the needed (reserve margin) and economic benefits tests in determining that only 27.2% of Clinton was used and useful. We directed the Commission on remand to make the used and useful determination based on established pre-1986 standards. We note that all but one of the briefs filed in the instant appeals were filed prior to our decision in *Illinois Power*.

In this appeal, Illinois Power and the Attorney General raise objections to the Commission's determination of the used and useful is-

sue. We note that, in reaching its determination in the instant rate case, the Commission utilized the same reserve margin analysis to determine what amount of Clinton capacity was needed as was used in the 1989 Rate Order. However, we also note the 1990 Rate Order does not reflect a consideration of the economic benefits of Clinton as a part of the used and useful determination. Based on our decision in *Illinois Power Co. v. Illinois Commerce Comm'n* (1991), 208 Ill. App. 3d 779, 566 N.E.2d 1372, we reverse the order of the Commission entered June 6, 1990, as amended. We find the Commission erred in using the needed (reserve margin) test in determining the used and useful portion of Clinton, and remand the cause for further proceedings consistent with our opinion in *Illinois Power*. We note that petitions for leave to appeal in *Illinois Power Co. v. Illinois Commerce Comm'n* (1991), 208 Ill. App. 3d 779, 566 N.E.2d 1372, are currently pending before the Illinois Supreme Court.

On appeal, OPC/CUB and the Attorney General contend the Commission erred in its treatment of depreciation expenses and deferred income tax expenses, and their associated reserve accounts. In addition, the Attorney General contends the Commission erred in its treatment of Illinois Power's Account 186 balance when it allowed an equity return on the non-used-and-useful portion of Clinton. We note that these issues are to some degree dependent on the used and useful question. Since the Commission must redetermine the used and useful issue on remand, we need not address these issues at this time.

OPC/CUB also assert that the Commission engaged in retroactive ratemaking when it allowed Illinois Power to bill customers for the energy consumed prior to the Commission's rate order at a rate not in effect until after the rate order was issued. We note, however, there is nothing in the 1990 Rate Order regarding this issue. The Commission did not authorize any type of proration of rates in order to implement the rate increase. Therefore, this issue is not properly before this court and we will not address it.

Illinois Power contends the Commission erred in using Illinois Power's actual capital structure in determining the rate of return. Illinois Power asserts that the Commission's decision on this issue was not supported by substantial evidence, and that it results in an improper second penalty for the imprudently incurred costs of Clinton.

■■ ■ Under the Public Utilities Act, a reviewing court shall reverse the Commission's findings if the findings are not supported by substantial evidence. (Ill. Rev. Stat. 1989, ch. 111⅔, par. 10—201(e)(iv)(A).) The credibility of expert witnesses and the weight to be given their testimony are matters for the Commission to decide as the

finder of fact. (*Lefton Iron & Metal Co. v. Illinois Commerce Comm'n* (1988), 174 Ill. App. 3d 1049, 529 N.E.2d 610.) A reviewing court may not substitute its interpretation of the evidence for that of the Commission. *People ex rel. Hartigan v. Illinois Commerce Comm'n* (1987), 117 Ill. 2d 120, 510 N.E.2d 865.

In the 1989 Rate Order proceedings, the Commission determined that in excess of $665 million in Clinton construction costs were unreasonably incurred. As a result of the Commission's findings, Illinois Power was required to write off these costs, which reduced the percentage of common equity in Illinois Power's capital structure. (In *Illinois Power Co. v. Illinois Commerce Comm'n* (1991), 208 Ill. App. 3d 779, 566 N.E.2d 1372, this court affirmed the Commission's findings concerning unreasonable costs. However, this court held that the Commission erred in reducing a deferred asset account, designated Account 186, by $101 million. This may eventually affect the total write-off Illinois Power is required to take and the future composition of Illinois Power's capital structure. In any event, this does not prevent this court from reviewing the Commission's action, which took account of the facts as they existed on the date of the Commission's decision in the instant case.)

In the proceedings in the instant case, Illinois Power proposed that, rather than using its actual capital structure, a hypothetical or target capital structure be used in setting the rate of return on rate base. The proposed structure was composed of 45% long-term debt, 12% preferred stock and 43% common stock equity, and is consistent with a AA rated utility. At the time of the Commission hearings, Illinois Power was a BBB rated utility. Illinois Power's witnesses recommended the use of the hypothetical capital structure because, in their opinion, Illinois Power's highly leveraged actual capital structure was inappropriate for ratemaking purposes.

Mark Winter, a member of the Commission staff, also recommended a target capital structure similar to that proposed by Illinois Power. He testified that Illinois Power's actual capital structure was inappropriate for ratemaking purposes.

Expert witnesses presented by the Illinois Industrial Energy Consumers, the OPC and the Attorney General testified that Illinois Power's actual capital structure should be used. They testified that a hypothetical capital structure is used when the actual capital structure is deemed inappropriate. The witnesses for the intervenors were of the opinion that use of the hypothetical capital structure would return to Illinois Power a portion of the costs the Commission had found in the 1989 Rate Order to have been unreasonably incurred.

In rebuttal testimony, Illinois Power witness Dr. Jerome Hass agreed that a hypothetical capital structure should be used only in special circumstances when the actual capital structure is deemed inappropriate. However, he testified that such circumstances were present in the instant case.

The Commission found that Illinois Power's actual capital structure was within the range for BBB rated utilities. The Commission held that a hypothetical capital structure should only be used "when the utility's actual capital structure is found to be unreasonable, imprudent or unduly affected by such circumstances as double leverage as so to unfairly burden the utility's customers." The Commission found that Illinois Power had failed to demonstrate that use of its actual capital structure was unreasonable, imprudent or unduly burdened the ratepayers. The Commission concluded that Illinois Power's actual capital structure should be used. The Commission found Illinois Power's actual capital structure to be 54.62% long-term debt, 11.84% preferred stock and 33.54% common stock equity.

■■ We find the Commission's decision was supported by substantial evidence in the record. The Commission was presented with conflicting expert opinions on the issue. We are unable to say as a matter of law that the Commission in this case erred in adopting Illinois Power's actual capital structure over the proposed hypothetical. We decline to accept Illinois Power's invitation to reweigh the evidence and substitute our own judgment.

Nor do we find any merit to Illinois Power's contention that use of its actual capital structure imposes an additional penalty on Illinois Power for imprudent costs incurred in the construction of Clinton. The result of the incurrence of unreasonable costs was a reduction in the common equity ratio in Illinois Power's capital structure. The use of the actual capital structure that resulted does not impose a second imprudence penalty.

■■ Illinois Power also contends the Commission erred in not allowing a higher rate of return on common equity in light of the use of the actual capital structure. The Commission determined that a rate of return on common equity of 12.25% was reasonable.

Again the Commission received conflicting testimony and evidence on this issue. While Illinois Power's witnesses testified that a greater return would be necessary if the actual capital structure were used, other testimony presented by intervenors was to the contrary. It was for the Commission to decide this issue in light of the conflicting positions taken by the parties.

The record shows that the rate granted fell within the range proposed by all but one witness. In fact, one of Illinois Power's witnesses recommended a range of from 12.25% to 12.75%. The Commission stated that it had reviewed all the evidence presented in the proceedings concerning the cost of common equity. We find no merit to Illinois Power's contention that the Commission's decision was not supported by substantial evidence.

Illinois Power contends in the alternative that the order must be remanded for further findings and analysis because the order contains no analysis of the need for a higher rate of return on common equity resulting from the use of the low common equity ratio.

■ Under section 10–110 of the Public Utilities Act, the Commission is required to "make and render findings concerning the subject matter and facts inquired into and enter its order based thereon." (Ill. Rev. Stat. 1989, ch. 111⅔, par. 10–110.) The Commission is required to make findings of fact upon the principal issues in the case, and such findings must be sufficiently specific to enable a court to intelligently review the decision of the Commission and ascertain whether the facts afford a reasonable basis for the order entered. (*Brinker Trucking Co. v. Illinois Commerce Comm'n* (1960), 19 Ill. 2d 354, 166 N.E.2d 18.) The Commission, however, is not required to make particular findings as to each evidentiary fact or claim. *United Cities Gas Co. v. Illinois Commerce Comm'n* (1970), 47 Ill. 2d 498, 265 N.E.2d 608.

■ In the instant case, the Commission stated that it reviewed all the evidence, and that it was determining the appropriate cost of common equity and rate of return which would correspond with the use of Illinois Power's actual capital structure. We find the order reflects the fact that the Commission considered the evidence presented by Illinois Power in reaching its determination. The facts found by the Commission afford a reasonable basis for its decision on this issue. While we are approving the methods adopted by the Commission, it well may be that the actual amount of the increase should or will vary depending on the resolution of other issues which have yet to be determined.

■ For the reasons stated above, we affirm the Commission's decision regarding use of Illinois Power's actual capital structure and its decision on the appropriate rate of return on common equity. For the reasons stated in *Illinois Power Co. v. Illinois Commerce Comm'n* (1991), 208 Ill. App. 3d 779, 566 N.E.2d 1372, we find the Commission erred in determining the portion of Clinton which is used and

useful, and reverse and remand the cause for further proceedings consistent with that opinion.

Affirmed in part; reversed in part and remanded in part for further proceedings consistent with this opinion.

GORMAN and SLATER, JJ., concur.