GOVERNOR'S OFFICE OF CONSUMER SERVICES, Appellant, v. ILLINOIS COMMERCE COMMISSION *et al.*, Appellees.—THE PEOPLE *ex rel.* ROLAND W. BURRIS, Attorney General, Appellant, v. ILLINOIS COMMERCE COMMISSION *et al.*, Appellees.

Third District Nos. 3—90—0875, 3—91—0032 cons.

Opinion filed October 16, 1991.

Roland W. Burris, Attorney General, of Springfield, and David G. Gilbert and Patricia A. O'Brien, both of Governor's Office of Consumer Services, of Chicago (Robert W. Cushing and Janice Dale, Assistant Attorneys General, of Chicago, of counsel), for petitioners.

Roland W. Burris, Attorney General, of Springfield (John P. Kelliher, Special Assistant Attorney General, of Chicago, of counsel), for respondent Illinois Commerce Commission.

Clark M. Stalker, Carrie Hightman, and Owen E. MacBride, all of Schiff, Hardin & Waite, of Chicago, and Edward C. Fitzhenry, Jr., and Eric Robertson, both of Lueders, Robertson & Konzen, of Granite City, for respondent Illinois Power Company.

JUSTICE McCUSKEY delivered the opinion of the court:

The Illinois Attorney General and the Governor's Office of Consumer Services appeal from an order of the Illinois Commerce Commission (Commission) which redesigned Illinois Power Company's electric service rates. The separate appeals have been consolidated. We affirm.

On December 8, 1989, Illinois Power filed revised tariff sheets with the Commission to implement redesigned electric service rates and to recover a revenue increase proposed in its then-pending revenue requirement case (Commission docket No. 89—0276). The December filing was designated docket No. 90—0006 and is the subject of this appeal.

The Commission had granted Illinois Power a $74.8 million rate increase in docket No. 89—0276 in an amended final order issued on July 13, 1990. The Commission's order was appealed to this court in *People ex rel. Hartigan v. Illinois Commerce Comm'n* (1991), 214 Ill. App. 3d 222, 573 N.E.2d 858. This court affirmed the Commission's adoption of Illinois Power's actual capital structure and the Commission's determination of an appropriate rate of return, but reversed the Commission's determination of the used and useful portion of the utility's Clinton Nuclear Power Station.

In docket No. 90—0006, Illinois Power sought approval of a permanent allocation among customer classes of the revenue increase proposed in docket No. 89—0276, and a redesign of rates and charges to recover the revenue increase. Intervening parties included the People of the State of Illinois *ex rel.* Attorney General Burris, the Illinois Industrial Energy Consumers (IIEC), the Governor's Office of Con-

sumer Services, the Office of Public Counsel, the Citizens Utility Board, the Small Business Utility Advocate, the Board of Trustees of the University of Illinois, and the staff of the Commission.

Evidentiary hearings were held on July 26, 27 and 31, 1990, and August 1 and 2, 1990. Oral argument was held on October 17, 1990. Experts testifying before the Commission provided analyses of Illinois Power's cost of service, and proposed various revenue allocations and rate designs. The record before the Commission contained over 600 transcribed pages of oral testimony and hundreds of pages of written testimony and exhibits.

On November 5, 1990, the Commission entered a final order in docket No. 90—0006. The Commission's 67-page order concluded that marginal costs should be the primary basis and principal determinant of cost of service for the design of Illinois Power's rates. The Commission adopted, with some exceptions, the marginal cost study proposed by Illinois Power and rejected the cost study sponsored by the Attorney General, the Governor's Office of Consumer Services, and the Citizens Utility Board. The Commission allocated the authorized revenue increase among Illinois Power's major customer classes as follows: residential, 9.6%; commercial, 7.1%; industrial, 7.1%; lighting, 7.1%; and municipal, 9.6%.

The Commission denied the applications for rehearing filed by the Attorney General and the Governor's Office of Consumer Services. Both parties appealed, and the cases were consolidated for our review.

■ Section 10—201 of the Public Utilities Act (Act) lists the powers and duties of the appellate courts upon appeals from orders of the Commission. (Ill. Rev. Stat. 1989, ch. 111²/₃, par. 10—201.) A reviewing court may affirm the Commission's order; it may reverse the order; or it may remand the cause to the Commission to receive new or additional evidence. (Ill. Rev. Stat. 1989, ch. 111²/₃, par. 10—201(e)(v); *People ex rel. Hartigan v. Illinois Commerce Comm'n* (1987), 117 Ill. 2d 120, 142, 510 N.E.2d 865, 874.) An order of the Commission can be reversed on appeal only if (1) the findings of the Commission are not supported by substantial evidence; (2) the order is without the jurisdiction of the Commission; (3) the order violates the Federal or State Constitution or laws; or (4) the proceedings or manner by which the Commission decided its order violate the Federal or State Constitution or laws, to the prejudice of the appellant. (Ill. Rev. Stat. 1989, ch. 111²/₃, par. 10—201(e)(iv).) The findings and conclusions of the Commission on questions of fact shall be held *prima facie* to be true and as found by the Commission; orders of the Commission

shall be held to be *prima facie* reasonable, and the burden of proof upon all issues raised on appeal shall be upon the party appealing from the order. (Ill. Rev. Stat. 1989, ch. 111⅔, par. 10—201(d).)

> "Apart from examining whether the Commission acted within the scope of its authority or infringed upon a constitutional right, a court is limited to reviewing whether the Commission set out findings of fact supporting its decision and whether the findings are against the manifest weight of the evidence." *Hartigan*, 117 Ill. 2d at 142, 510 N.E.2d at 874.

The purpose of the proceedings before the Commission was three-fold: to choose the study which best measured Illinois Power's cost to provide service in the future; to allocate the revenue increase among the utility's major customer classes; and to design the specific rates and charges for each customer class to enable the company to collect its revenue requirement. The determination of revenue allocation, rate design, and customer charges depended upon the selection of an appropriate marginal cost study.

The Attorney General's main contention on appeal is that the rates produced by the marginal cost methodology adopted by the Commission do not comply with the regulatory goals of the Act. The Attorney General argues that the Commission's order is contrary to law because it adopts a cost of service study which fails to consider the effects of excess capacity on long-term cost of service; because the Commission's revenue allocation methodology similarly fails to consider excess capacity; and because the findings with respect to customer charges and rate design violate section 1—102 of the Act. (Ill. Rev. Stat. 1989, ch. 111⅔, par. 1—102.) The Attorney General requests that the case be remanded to the Commission for the establishment of an identifiable standard for satisfying the long-term cost of service "requirement," as that term is argued to be used in the Act.

■ We disagree with the Attorney General's contention that the Commission erroneously rejected the Attorney General's long-term marginal cost of service study in favor of Illinois Power's cost study. We find substantial evidence in the record to support the Commission's adoption of Illinois Power's marginal cost study.

The marginal cost study presented by Illinois Power measured its cost to provide additional electric service in the future. The study included an analysis of three major cost components: marginal customer costs; marginal capacity costs; and marginal energy costs. Witnesses for Illinois Power testified as to the validity of the marginal cost study. The Commission staff and the expert witness retained by IIEC used Illinois Power's study in support of their analyses and proposals.

Commission staff witness Corbin also testified in support of Illinois Power's study. (The Commission's order did reflect his objection to Illinois Power's inclusion of a portion of minimum distribution system costs in customer-related costs.)

James Drzemiecki provided testimony on behalf of the Attorney General, the Citizens Utility Board, and the Governor's Office of Consumer Services. Mr. Drzemiecki provided an analysis of Illinois Power's cost of service and offered various revenue allocation and rate design proposals. Mr. Drzemiecki concluded that Illinois Power's marginal cost analysis was inadequate to properly allocate costs.

IIEC witness Chalfant testified that the Attorney General's cost study was neither a valid marginal cost study nor a valid embedded cost study:

> "[B]ecause [Drzemiecki] makes no attempt to determine marginal distribution or subtransmission costs, his study cannot be considered marginal; because he alters what he represents to be an embedded cost study, his study cannot be considered embedded; and, because he totally omits a large portion of transmission costs, his study cannot be considered valid in any sense."

The Commission concluded:

> "The Commission believes, as it did in the Commonwealth Edison case in which Mr. Drzemiecki testified ***, that Mr. Drzemiecki's study is not a marginal cost study as he contends. Mr. Drzemiecki's blending of marginal and embedded cost concepts severely limits the value this Commission can place on his analysis.
>
> $$* * *$$
>
> Mr. Drzemiecki's cost study incorrectly mixes marginal and embedded cost concepts with the result that it is neither a valid marginal cost study nor a valid embedded cost study. If the Commission were to accept studies that deviate from principles governing appropriately prepared cost studies, i.e., blend disparate concepts on an ad hoc basis, the integrity of such studies would be compromised and it would invite the manipulation of studies in order to achieve the sponsor's desired results."

■ The Attorney General also fails to provide or recommend a definition of "long term." Illinois Power's study was based upon a five-year estimate of the cost of energy to its system, while the Attorney General's study was calculated on a 10-year basis. With a definition of "long term" otherwise unavailable, either of these studies could qualify as having considered costs on a long-term basis. We de-

fer, then, to the expertise of the Commission to determine the proper time period for its adopted cost study.

■ The Attorney General maintains that Illinois Power's failure to include in its study the effects of excess capacity on long-term costs of service violates the legislative goals of the Act. Section 1—102 of the Act provides, in part:

> "The General Assembly finds that the health, welfare and prosperity of all Illinois citizens require the provision of adequate, efficient, reliable, environmentally safe and least-cost public utility services at prices which accurately reflect the *long-term cost of such services* and which are equitable to all citizens." (Emphasis added.) Ill. Rev. Stat. 1989, ch. 111²/₃, par. 1—102.

We do not find the prefatory language of section 1—102 of the Act to mandate the consideration of the "long-term" cost of providing electrical utility service. (Ill. Rev. Stat. 1989, ch. 111²/₃, par. 1—102.) This section is identified simply as "Findings and Intent." The section states the general reasons for enactment of the legislation and lists major goals and objectives of public utility regulation. The section neither mandates the adoption of a particular type of cost study nor requires a certain time period over which such costs are to be developed. Furthermore, "long-term cost" is not defined in the Act, and the Commission is given no direction as to how it is to consider "long-term costs."

> "Prefatory language \*\*\* generally is not regarded as being an operative part of statutory enactments. The function of the preamble of a statute is to supply reasons and explanations for the legislative enactments. The preamble does not confer powers or determine rights. [Citation.] A declaration of policy contained in a statute is, like a preamble, not a part of the substantive portions of the act. Such provisions are available for clarification of ambiguous substantive portions of the act, but may not be used to create ambiguity in other substantive provisions. [Citation.]" *Illinois Independent Telephone Association v. Illinois Commerce Comm'n* (1988), 183 Ill. App. 3d 220, 236-37, 539 N.E.2d 717, 726.

■ Upon adoption of Illinois Power's marginal cost study, the Commission used the "Equal Percentage of Marginal Cost" (EPMC) approach to allocate the revenue increase among the company's major customer classes. This method attempts to equalize marginal cost recovery among the customer classes while limiting the overall increase any particular class will experience.

The Attorney General complains that the EPMC approach magnifies the distortions of marginal cost estimates and does not allow for the effects of system-wide excess capacity on long-term costs, in violation of sections 9—215 and 1—102 of the Act (Ill. Rev. Stat. 1989, ch. 111²/₃, pars. 9—215, 1—102). The Attorney General argues that the EPMC allocation ignores the long-run capital costs upon which the emphasized short-term cost savings are based. The result, it is alleged, is a rate structure which disproportionately burdens residential customers. The Attorney General argues that use of the EPMC approach conflicts with section 1—102 of the Act, which mandates the setting of rates at "prices *** which are equitable to all citizens." (Ill. Rev. Stat. 1989, ch. 111²/₃, par. 1—102.) As discussed earlier in this opinion, however, we do not consider this section to be a substantive provision of the Act. Also, the Commission used the *constrained* EPMC approach, which limits the impact of the revenue increase on residential customers. The Commission stated:

> "The Commission continues to believe that the constrained EPMC approach is the most appropriate methodology for allocating an overall revenue increase level to the customer classes. The constrained EPMC approach allows for continued movement toward system average marginal cost recovery for each major class, while taking into account other appropriate ratemaking considerations such as rate continuity, customer impact and customer understanding."

The Attorney General contends that section 9—215 of the Act (Ill. Rev. Stat. 1989, ch. 111²/₃, par. 9—215) requires the Commission to make excess capacity adjustments to marginal cost studies or to interclass revenue allocations in order to set rates which are just and reasonable. We note, however, that section 9—215 only *"empower[s]"* (emphasis added) the Commission to make adjustments in rates; such action is merely allowed, not required. In addition, we reiterate the Commission's broad discretion in setting just and reasonable rates.

Finally, the Attorney General takes issue with three aspects of the rates and charges adopted for the individual tariff schedules: the $12.50 monthly residential facilities charge; the residential declining block winter energy charge; and the residential space heat rate. Again, the Attorney General argues that the rate design violates section 1—102 of the Act (Ill. Rev. Stat. 1989, ch. 111²/₃, par. 1—102) because the rates and rate structures do not reflect a consideration of the effects of excess capacity. For reasons discussed earlier, we find the argument without merit. We find substantial evidence in the record to support the Commission's determination.

■ The setting of utility rates is a legislative rather than a judicial function. (*Hartigan*, 117 Ill. 2d at 142, 510 N.E.2d at 874.) " 'A just and reasonable rate *** is *** a question of sound business judgment rather than one of legal formula ***.' " The determination of what is a just and reasonable rate " 'is a question of fact to be settled by the good sense of the tribunal it may come before.' " (*Produce Terminal Corp. v. Illinois Commerce Comm'n* (1953), 414 Ill. 582, 590, 112 N.E.2d 141, 144, quoting *State Public Utilities Comm'n ex rel. City of Springfield v. Springfield Gas & Electric Co.* (1919), 291 Ill. 209, 218, 125 N.E. 891, 896.) We accord great weight to the order of the Commission as reflecting "the judgment of a tribunal appointed by law and informed by experience." *Village of Apple River v. Illinois Commerce Comm'n* (1960), 18 Ill. 2d 518, 523, 165 N.E.2d 329, 332.

For the reasons stated above, we affirm the order of the Commission in this matter.

Affirmed.

GORMAN and BARRY, JJ., concur.