THE CITY OF CHICAGO, Appellant, v. THE ILLINOIS COMMERCE COMMISSION *et al.*, Appellees.

First District (6th Division)   No. 1—91—0583

Opinion filed June 26, 1992.—Rehearing denied September 14, 1992.

Kelly R. Welsh, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, Ruth Moscovitch, Alan Neff, Diane M. Pezanoski, and Patrick N. Giordano, Assistant Corporation Counsel, of counsel), for petitioner.

Roland W. Burris, Attorney General, of Springfield (John P. Kelliher, Special Assistant Attorney General, of Chicago, of counsel), for respondent Illinois Commerce Commission.

Sarah J. Read, Gerard D. Kelly, and Anastasia M. Polek, all of Sidley & Austin, of Chicago, for respondent Commonwealth Edison Company.

MaryNic U. Foster and Robert W. Cushing, both of Chicago, and Frederick B. Zalcman, of Department of Energy and Natural Resources, of Springfield, for Department of Energy and Natural Resources *ex rel.* Roland Burris.

PRESIDING JUSTICE EGAN delivered the opinion of the court:

The City of Chicago (City) has filed this petition for review of an order of the Illinois Commerce Commission (Commission) which approved an energy plan submitted by the respondent, Commonwealth Edison Company (Edison). The City contends that the Commission did not use the proper standard in evaluating Edison's plan.

The present Public Utilities Act (Act) (Ill. Rev. Stat. 1989, ch. 111²/₃, par. 1—101 *et seq.*) was enacted in 1985 and consists of 14 articles governing the regulation of public utilities. One of the objectives of the Act is "the provision of reliable energy services at the least possible cost to the citizens of the State." (Ill. Rev. Stat. 1989, ch. 111²/₃, par. 1—102.) Article VIII of the Act, entitled "Service Obligations and Conditions," contains several sections designed to achieve this "least-cost" goal.

First, section 8—401 imposes a duty on all utilities subject to the Act to "provide service and facilities which are in all respects adequate, efficient, reliable and environmentally safe and which, consistent with these obligations, constitute the least-cost means of meeting the utility's service obligations." (Ill. Rev. Stat. 1989, ch. 111²/₃, par. 8—401.) Second, section 8—102 authorizes the Commission to investigate a utility's current operations at any time and order a management audit if necessary to ensure least-cost service. (Ill. Rev. Stat. 1989, ch. 111²/₃, par. 8—102.) Additionally, section 8—404 empowers the Commission to require a utility to implement "energy conservation, demand control, or alternative supply programs" whenever it determines, after a hearing, that such programs would likely be cost-effective. Ill. Rev. Stat. 1989, ch. 111²/₃, par. 8—404.

Section 8—402, which is the subject of this appeal, requires the Department of Energy and Natural Resources (DENR) to prepare

a comprehensive, long-range electric energy plan for the entire State of Illinois and to review the plan at least every two years. Additionally, every two years each public utility providing energy services must file with the DENR and the Commission an energy plan for its territory, consistent with the planning objectives and requirements of article VIII. (Ill. Rev. Stat. 1989, ch. 111²/₃, par. 8—402(c).) The DENR is then required to review each utility's plan and provide testimony before the Commission as to the adequacy of each plan in satisfying the objectives of article VIII and the Act. Each plan must contain year-by-year projections of demand and supply for the next 20 years, and most importantly, the utility must demonstrate "that the proposed plan represents the least-cost means of satisfying energy service needs consistent with the objectives of [the] Act, including \*\*\* a demonstration that the plan fully considers and utilizes all available, practical and economical conservation, renewable resources, cogeneration and improvements in energy efficiency." Ill. Rev. Stat. 1989, ch. 111²/₃, par. 8—402(d)(iii).

The Commission is required to hold hearings on the plans and to select the plan "which will result in the greatest likelihood of providing adequate, efficient, reliable and environmentally safe energy services at the least cost to consumers, and which utilizes, to the fullest extent practicable, all economical sources of conservation, renewable resources, cogeneration and improvements in energy efficiency as the primary sources of new energy supply." (Ill. Rev. Stat. 1989, ch. 111²/₃, pars. 8—402(e), (f).) If the Commission determines that a utility's existing or planned programs or policies inhibit or do not fully ensure the economical utilization of conservation, renewable resources, cogeneration (which is defined as a simultaneous generation of heat and power (83 Ill. Adm. Code §440.100 (1991))) or improvements in energy efficiency, then the Commission is empowered by section 8—402(g) to devise necessary programs and policies and order the utility to implement them. That section also allows the utility to recover the costs of implementing such programs or policies through the rate-making procedures. Ill. Rev. Stat. 1989, ch. 111²/₃, par. 8—402(g).

Section 8—402(d)(iv) of the Act directs the Commission to "determine the precise form, scope and contents" of the least-cost plans. (Ill. Rev. Stat. 1989, ch. 111²/₃, par. 8—402(d).) Pursuant to this section, the Commission promulgated administrative rules governing the least-cost planning process. 83 Ill. Adm. Code Part 440 (1991) (the Rule).

Under section 440.600 of the Rule, each utility is required to provide an assessment of existing resources, including "[i]dentification of

the generating capacity provided by cogeneration[,] nonconventional technologies relying on renewable resources, and other non-utility producers *** that are expected to be available for purchase by the utility." The assessment must also include a "discussion of existing utility demand side programs[1] and the estimated impact of those programs on the utility's generating capacity requirement." (83 Ill. Adm. Code §§440.600(h), (k) (1991).) This section does not require the utility to show that it is currently providing least-cost service or to show that its current service is consistent with the objectives of sections 1—102, 8—401 and 8—402 of the Act.

Section 440.620, however, does require the utility to show that the mix of *future* resources it selects are likely to be least-cost and are consistent with the objectives of sections 1—102, 8—401 and 8—402 of the Act. (83 Ill. Adm. Code §440.620 (1991).) In furtherance of this objective, section 440.610 requires the utility to consider, at a minimum, all programs and policies contained in the comprehensive electric utility energy plan most recently adopted by the Commission as alternative methods of meeting future demand for electric service. 83 Ill. Adm. Code. §440.610 (1991).

Edison filed its "Electric Energy Plan," or "Least-Cost Plan," with DENR and the Commission on January 8, 1990. The Commission instituted proceedings to review Edison's plan on January 24, 1990. The City of Chicago was one of numerous participants in the proceedings; the Commission granted petitions to intervene filed on behalf of the Office of Public Counsel, Office of Small Business Utility Advocate, Governor's Office of Consumer Services, the People of Cook County, the People of Illinois, Peoples Gas, North Shore Gas, Northern Illinois Gas, Citizens Utility Board, Illinois Industrial Energy Consumers, Community Action for Fair Utility Practice and National People's Action.

The parties held two prehearing conferences and nine workshops which resulted in the preparation of a prehearing memorandum identifying the issues in dispute. The prehearing memorandum identified 30 disputed issues relating to the adequacy and appropriateness of Edison's plan under the requirements of the Act and the Commission's least-cost planning rule. The Commission then held several evidentiary hearings, and the record was closed on September 14, 1990.

---

[1]Demand-side programs are those concerned with conservation and load management; supply-side programs are concerned with existing resources, that is, present capacity.

The hearing examiners issued a proposed order on October 26, 1991. Edison, the Commission staff, DENR, the Office of Public Counsel, the Illinois Industrial Energy Consumers, the Attorney General, and the Small Business Utility Advocate filed exceptions and replies to the proposed order. The City of Chicago, the people of Cook County, the National People's Action and Community Action for Fair Utility Practice filed joint exceptions.

On December 12, 1990, the Commission issued a 36-page order adopting and modifying Edison's plan. Edison's plan, consisting of five volumes and nearly 1,000 pages of text and illustrations, summarized Edison's planning goals and objectives, analyzed more than 100 alternate demand-side and supply-side resources, and described Edison's implementation plans for the 1991-92 period. Only the City has appealed. The Commission, Edison and the DENR have appeared as appellees.

In its order, the Commission addressed the purpose of the least-cost planning process, noting that the City had raised a number of issues during the proceeding that reflected a definition of the nature and purpose of least-cost planning which differed from that used by the other parties. The Commission agreed with the view of Edison, DENR, and the Commission staff describing the least-cost planning process as a long-range integrated resource planning process resulting in the selection of future resources and an implementation plan for acquiring those resources. The Commission rejected the City's view that the purpose of least-cost planning is to produce, subject to various constraints, the lowest cost of meeting the energy needs of the utility's customers both when new resources are needed and when no resources are needed. The Commission concluded that "the focus of the least-cost planning process is, and should be, on the need for new resources, not generally on the utility's management of its existing resources." That conclusion by the Commission is the basis of this appeal. The City contends that the focus of any least-cost plan may not be acquisition of future resources, but rather must be management of existing resources.

The City's ultimate objective in this case appears to be the implementation of conservation measures designed to free up existing capacity so that Edison can engage in potentially profitable "off-system" sales, that is, sales to utility companies in other regions. The City argued to the Commission that Edison had failed to analyze whether demand-side resources should be added to free up existing capacity for off-system sales. The Commission concluded that the purpose of least-cost planning is to identify cost-effective and reliable re-

sources, demand-side or supply-side, to meet projected *future* needs of *the utility's own service territory*. The Commission found that the potential benefit from off-system sales was speculative, adding the following:

> "The Commission is of the opinion that it would not be appropriate to include off-system sales in the cost-benefit analysis for a new resource or in the calculation of avoided costs without a high degree of certainty that such sales would be made. Although it is easy to conclude as the City does that 'some profitable sales are likely to be profitable' *** it cannot be concluded that [demand-side] programs which pass a cost effectiveness test only due to an assumption that off-system sales will occur and will be profitable, would remain a cost effective and appropriate resource if such sales fail to materialize. Because the City's proposal would unduly complicate an already complex process and increase existing uncertainty, it should be rejected."

Implicit in the City's argument that the Commission erred in finding that the least-cost planning process is directed only to the acquisition of future resources is an assertion that the Commission would have required Edison to analyze the cost-effectiveness of off-system sales if it had not adopted such a restricted view of the purpose of least-cost planning.

We will first address Edison's motion to dismiss the petition for review. It argues that the City's petition presents only an "abstract question," that the City does not dispute any of the factual findings of the Commission, and the City has not suggested that the Commission would have disapproved the plan if it had adopted the approach suggested by the City. In substance, Edison maintains that the City has not presented us with a justiciable controversy. The Commission and DENR have adopted Edison's argument.

■ We concede that Edison's argument has some appeal. It is the general rule that a court will not decide cases solely to establish a precedent or to guide future litigation. (*Madison Park Bank v. Zagel* (1982), 91 Ill. 2d 231, 437 N.E.2d 638.) An exception to the general rule exists in certain cases involving the public interest. In addition to the degree of public interest involved, a court should consider whether it is desirable to make an authoritative determination of the question for guidance of public officials and whether the question is likely to recur. (*Hightower v. Duffy* (1989), 192 Ill. App. 3d 65, 548 N.E.2d 495.) The question before us will likely recur every two years. (*Cf. Sosna v. Iowa* (1975), 419 U.S. 393, 42 L. Ed. 2d 532, 95 S. Ct.

553.) It involves the plenary powers of the agency charged with the supervision of utilities providing energy services throughout this State; consequently, it does involve a substantial public interest. Last, we believe that it is desirable to make an authoritative determination of the question for the future guidance of the Commission and the DENR. We conclude, therefore, that the public interest would be better served if we decide the question.

■ We are asked to decide, not whether the decision of the Commission was against the manifest weight of the evidence, but whether the Commission decided the case under an improper standard, which is a question of law. (*Cf. Azteca Currency Exchange, Inc. v. Illinois Department of Financial Institutions* (1983), 112 Ill. App. 3d 279, 445 N.E.2d 398.) We recognize that the Commission's interpretation of the statute is entitled to substantial deference. (*Milkowski v. Department of Labor* (1980), 82 Ill. App. 3d 220, 402 N.E.2d 646.) But the Commission's determination of a question of law is not binding upon a reviewing court. *Moncada v. Illinois Commerce Comm'n* (1991), 212 Ill. App. 3d 1046, 571 N.E.2d 1004.

We turn now to the City's arguments. The City contends that the Commission's order adopting Edison's plan is contrary to law, because the Commission reviewed the plan under an incorrect interpretation of section 8—402 of the Act. The City maintains that the purpose of the least-cost planning process is to provide utility service at the lowest possible cost, both when new resources are needed and when a change in existing resources would lower the cost of providing service. The City relies on the plain language of the statute in support of its interpretation; alternatively, if this court finds that the statute is ambiguous, the City contends that the legislative history and overall purpose of the Act support its reading of section 8—402.

■ The primary rule of statutory construction is that the reviewing court must ascertain and give effect to the intent of the legislature which is best evidenced by the language of the statute. (*Kraft, Inc. v. Edgar* (1990), 138 Ill. 2d 178, 561 N.E.2d 656.) Where the statute is clear and unambiguous, the court may not depart from the plain language and meaning of the statute by reading into it exceptions, limitations, or conditions that the legislature did not express. *Kraft*, 138 Ill. 2d at 189.

■ The City argues that by adopting an overly restricted view of section 8—402, the Commission has eviscerated the least-cost duty, giving utilities an unrestrained right to ignore cost savings and to charge any price they want for service until some point in

the distant future. This argument is not convincing. The Commission's order was directed only toward the least-cost planning process, and not the general least-cost duty. Edison admits that it has a general duty under section 8—401 of the Act to provide service and facilities which are adequate, efficient, reliable and environmentally safe, and which constitute the least-cost means of meeting its service obligations. Additionally, Edison concedes that under section 8—404 of the Act the Commission may at any time require Edison to implement energy conservation, demand control or alternative supply programs if such programs are deemed cost-effective. Edison may not charge any price it wants for utility service; sections 9—211 and 9—212 limit the costs that a utility can pass on to its customers. Thus, under the Commission's interpretation of section 8—402, Edison's current and continuous least-cost obligation remains in force outside of the planning process through other sections of the Act.

The City argues that the Commission's finding that the least-cost planning process is directed only toward the acquisition of future resources renders the least-cost duty futuristic and conditional, as it will only arise at some point in the distant future, if and when new capacity is needed.

As Edison correctly notes, the City appears to confuse "resources" with "capacity." The City's argument implies that the least-cost duty will arise only when a utility needs to create additional capacity by building a new facility. However, the Commission's view of least-cost planning is directed toward the acquisition of resources, not capacity. Resources include both capacity, referred to as "supply-side" resources, as well as conservation, demand control and load management programs, referred to as "demand-side" resources. Thus, the least-cost duty will certainly arise in the near future, when utilities need to acquire new resources of any type to meet anticipated demand. Therefore, the Commission's order in this case does not render the least-cost duty "futuristic" or "conditional."

Section 1—102, which sets forth the general goals of the Act, states:

> "The General Assembly finds that the health, welfare and prosperity of all Illinois citizens require the provision of adequate, efficient, reliable, environmentally safe and least-cost public utility services ***. It is further declared that the goals and objectives of [public utility] regulation shall be to ensure *** the provision of reliable energy services at the

least possible cost to the citizens of the State." (Ill. Rev. Stat. 1989, ch. 111²/₃, par. 1—102.)

Section 8—401 imposes a blanket duty upon all public utilities under the Act to

> "provide service and facilities which are in all respects adequate, efficient, reliable and environmentally safe and which, consistent with these obligations, constitute the least-cost means of meeting the utility's service obligations." (Ill. Rev. Stat. 1989, ch. 111²/₃, par. 8—401.)

Section 8—402 implements the least-cost planning process. Subsection (a) of that section states that the objective of the planning process is

> "to ensure the provision of adequate, efficient, reliable and environmentally safe energy services at the lowest possible cost to all Illinois energy consumers and users." Ill. Rev. Stat. 1989, ch. 111²/₃, par. 8—402(a).

The City maintains that these provisions clearly evidence the General Assembly's intent to impose a current and continuous duty on utilities to provide their services at the lowest possible cost to consumers. In accordance with this objective, the City contends that the legislature intended the least-cost planning process implemented by section 8—402 to require a showing that both current and future demand for energy will be met with least-cost service.

Edison maintains that the City's interpretation of section 8—402 is contrary to two basic rules of statutory construction: (1) a specific statutory provision controls over a more general provision (*Maxwell v. Hobart Corp.* (1991), 216 Ill. App. 3d 108, 111, 576 N.E.2d 268; see also *Governor's Office of Consumer Services v. Illinois Commerce Comm'n* (1991), 220 Ill. App. 3d 68, 580 N.E.2d 920 (*GOCS*)); and (2) no statutory provision should be interpreted so as to render another provision meaningless. *In re Application of County Collector* (1989), 132 Ill. 2d 64, 72, 547 N.E.2d 107.

First, the City seeks to impose a statutory duty through section 1—102, even though that section is merely prefatory in nature. (See *GOCS*, 220 Ill. App. 3d at 74 (holding that section 1—102 of the Act does not impose any substantive requirements).) Thus, the requirements of section 8—402 cannot be expanded by the general goals contained in section 1—102. Even if we were to disregard the holding of *GOCS*, the language of section 8—402 would nonetheless control in this case, because it is more specific than the language of section 1—102. See *Maxwell*, 216 Ill. App. 3d at 111.

Second, the City's interpretation of section 8—402 would render other sections of the Act redundant. The City seeks to impose the same current and continuous duty through section 8—402 that is already imposed through section 8—401. Similarly, a broad reading of section 8—402 would render it duplicative of section 8—404, which empowers the Commission to order a utility to implement conservation, demand control, or alternative supply programs if such programs are cost-effective. A logical conclusion is that section 8—401 and section 8—404 give the Commission different powers than section 8—402 does, as those sections authorize the Commission to take action in furtherance of the least-cost goal *outside* the planning process. Thus, the legislature's intent to impose a current and continuous least-cost duty is manifested in sections 8—401 and 8—404, while section 8—402 ensures that utilities pursue the goal of least-cost service when planning for the future. In short, the duty sought to be imposed on the Commission by the City under section 8—402 already exists under sections 8—401 and 8—404.

Section 8—402(d)(iii) requires the utility to demonstrate that its plan represents the least-cost means of satisfying energy service needs and that the plan fully considers and utilizes all available, practical and economical conservation, renewable resources, co-generation and improvements in energy efficiency. The City argues that "[n]one of these provisions applies to the future creation of new capacity; they plainly refer to current service of utilities." This argument begs the ultimate question: whether *the plan* is directed at replacement of existing resources or selection of future resources. Although the language of the statute does not expressly limit its application to future resources, neither does it expressly require the utility to demonstrate as part of the planning process that its current service is least-cost. We reject the City's argument that section 8—402(d)(iii) plainly refers to current service.

The City also relies on section 8—402(f), which requires the Commission to "select the plan *** which will result in the greatest likelihood of providing *** services at the least cost to consumers." (Ill. Rev. Stat. 1989, ch. 111⅔, par. 8—402(f).) The City contends that this provision supports its view because it contains no temporal restrictions or conditions with regard to the requirement that utilities provide least-cost service. Like section 8—402(d)(iii), however, this provision is not directed toward the utility's duty; rather, it is directed toward the Commission's selection of a *plan* for acquiring *future* resources. Moreover, section 8—402(f) can be read to contain a temporal restriction: the directive that the Commission select the

plan that *will* result in least-cost service is written in the future tense, supporting the argument that the planning process is future-oriented.

As Edison argues, planning is necessarily a forward-looking activity, and all resources, both demand-side and supply-side, require many years to develop. Any requirement that utilities plan to provide least-cost service immediately would be impossible to satisfy. Thus, common sense supports the Commission's interpretation of the least-cost planning process.

The City refers to section 8—402(g), which states that if the Commission determines as a result of the hearings that a utility's *existing or planned* programs or policies inhibit or do not fully ensure the economical utilization of conservation, renewable resources, cogeneration, or improvements in energy efficiency, then it shall devise such programs and policies as are necessary and order the utility to implement such programs or policies. Thus, section 8—402(g) allows the Commission to analyze the utility's existing operations and order immediate implementation of conservation programs.

Because the language of section 8—402(g) clearly refers to existing programs, the City infers that the entire planning process requires a review of current operations as well as selection of future resources. However, section 8—402(g) is different from section 8—402(d) in that it does not put the burden on the utility to show that its current service is least-cost; it simply gives the Commission power to act *sua sponte* within the planning process if it determines that existing programs or policies do not ensure full utilization of economical resource options. Because these two sections impose different burdens, section 8—402(g) may not be read to expand the requirements of 8—402(d) and require utilities to affirmatively show that their current service is least-cost. See *Berwyn Lumber Co. v. Korshak* (1966), 34 Ill. 2d 320, 215 N.E.2d 240 (courts should not enlarge the scope of plain provisions of legislation in order to more effectively accomplish the overall purpose of the Act).

The City argues that its interpretation of the intent of the least-cost planning process is supported by the Commission's own "Least-Cost Planning Rule" (83 Ill. Adm. Code Part 440 (1991)) (Rule), which was promulgated pursuant to the Act's directive that the Commission "determine the precise form, scope and contents" of the least-cost plan. The City maintains, however, that the Rule should be disregarded to the extent that it is inconsistent with the statute.

Although the Commission was charged with responsibility for promulgating the least-cost planning rule, it did not have unbridled discretion in doing so. The Commission's power under section 8—402(d) is limited to determining the contents of plans consistent with the requirements of that section and as necessary to effectuate the planning objectives of the Act. (See Ill. Rev. Stat. 1989, ch. 111²/₃, par. 8—402(d).) Therefore, if we determine that the Rule is inconsistent with the Act, the Rule must be disregarded and the Act must be followed. We have examined the Rule. For the sake of brevity in an already too long opinion, we simply hold without discussion that the Rule is fully consistent with section 8—402 of the Act.

Again for the sake of brevity we will not discuss at length the parties' arguments that the legislative history supports their position. Although the Act is not ambiguous and resort to extrinsic aids is unnecessary for us to interpret it, we have considered the legislative debates, the difference between the previous Public Utilities Act and the current Public Utilities Act, a report of the Joint Committee on Public Utility Regulation and the final report of the Governor's Task Force on Public Utility Regulation, upon which the Joint Committee relied. Suffice it to say that we conclude that the legislative history supports the interpretation of section 8—402 given by the Commission. For one example, the report of the Task Force created by the governor to study public utility regulation recommended that the required utility plans demonstrate "that the utility's *current* and projected operations represent the lowest possible cost satisfaction of its customers' energy service needs." (Emphasis added.) The Joint Committee report, however, did not contain a requirement that utilities demonstrate that their current operations were least-cost. We find it significant that the language supporting the City's view was not drafted into either the Joint Committee report or the Public Utilities Act.

For all these reasons, we conclude that the Commission correctly interpreted section 8—402 of the Public Utilities Act. The decision of the Commission approving Edison's plan is affirmed.

Affirmed.

McNAMARA and RAKOWSKI, JJ., concur.