(No. 73812.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. CLIFFORD MITCHELL, Appellee.

*Opinion filed May 20, 1993.*

Roland W. Burris, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Renee G. Goldfarb and Barbara L. Jones, Assistant State's Attorneys, of counsel), for the People.

Rita A. Fry, Public Defender, of Chicago (Stephanie Ellbogen, Assistant Public Defender, of counsel), for appellee.

JUSTICE HARRISON delivered the opinion of the court:

A jury found the defendant, Clifford Mitchell, guilty of aggravated criminal sexual assault in violation of sec-

tion 12—14(b)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 12—14(b)(1)). The circuit court of Cook County denied his post-trial motion for a new trial and sentenced him to a term of 12 years in the custody of the Illinois Department of Corrections. The defendant prevailed upon appeal (228 Ill. App. 3d 917), contending, *inter alia*, that *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, and the 1970 Illinois Constitution prohibit the exclusion of jurors solely upon the basis of gender and that hearsay statements were improperly admitted into evidence in violation of certain of the provisions of section 115—10 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 115—10). This court granted the State leave to appeal pursuant to Supreme Court Rule 315 (134 Ill. 2d R. 315).

The defendant was charged with having committed an act of sexual penetration, specifically, inserting his finger in the vagina of the victim, L.M., who was nine years old at the time the alleged incident occurred in August of 1988 and 10 years old at the time of trial in July of 1989. At trial L.M. testified inconsistently. On direct examination by the State she said that she had been at home in her family room with the defendant, her uncle, sometime in August of 1988 but that he had not touched her anywhere except on her leg. When subsequently asked whether anyone had told her not to tell what had really happened, she answered, "My mom," who is the defendant's sister. Thereafter on direct examination she stated that the defendant had never touched her between her legs but testified further that she had given a different account to Detective Richard Janowiak and that she had been truthful with him. Similarly, she remembered talking with an assistant State's Attorney at the police station about the incident with her uncle and stated that she had told the truth to this person. On cross-examination L.M. testified that Detective Janowiak

had asked her to come to the police department. She indicated that because her mother had told her to tell the detective that her uncle had touched her in "a bad place," she had told the detective that something had happened to her. Further on cross-examination L.M. both denied that her uncle had never touched her in the area between her legs and denied that he had touched her there. Having reiterated on cross-examination that he had touched her only on her leg, she later stated that he had touched her on her pants as well. On redirect examination L.M. denied at first that the defendant had put his finger in her vagina but upon further questioning answered that he had done so "[a] little." On re-cross-examination she reverted to her former position that he had not.

Detective Janowiak testified for the State that, based upon a conversation with a person named Mary Zontek, he had contacted L.M.'s mother, Tammy Mitchell, on September 20, 1988,

> "about information I received that her nine[-]year[-]old daughter [L.M.], had been sexually abused by her uncle, who is a family member, who lives in the household.
>
> I briefly explained the situation to her over the phone, and told her that that was the information I received. She said that yes, she was aware there was something that happened, and she agreed to \*\*\* bring [L.M.] down to the police department so I could conduct an interview with her."

The detective said that upon his interview with L.M. he asked the child "if the information I had received was correct, that her uncle had possibly sexually abused her, and she told me it was true." Detective Janowiak stated that the child had told him that the defendant had sat down next to her on a couch in the family room, had watched television for a little while, and then had placed his hand inside her pants and his finger inside her va-

gina. When the detective asked her whether she had told anyone, he said, L.M. responded that she had told her mother. Detective Janowiak testified further that the defendant had been at the police station during his conversation with L.M. and that initially the defendant had denied the allegations but later, after having been given *Miranda* warnings, had made an inculpatory statement, reduced to writing by the officer and signed by the defendant. The detective read the statement to the jury.

Also testifying for the State was Colleen Hyland, an assistant State's Attorney, who had interviewed L.M.'s mother after speaking with Detective Janowiak. Over the defendant's objection this witness stated that L.M.'s mother had informed her that the child had told her that the defendant had "grabbed her and had placed his hands down her pants, and rubbed her back." Hyland said further that thereafter L.M. herself had told Hyland that, "some time before school had started, and some time after the fireworks," her uncle, whom she referred to as "Joey,"

> "was in the family room of their place, their residence, and that he had grabbed her, she said that her pants were baggy, and kind of falling down, and that he had put his finger inside her, he put his hands down her pants, and put his finger inside her, and she told him to stop, and she told me that he did stop.
>
> She also told me that Joey—she liked Joey, Joey would buy her gifts and had bought her gifts, and she told Joey to stop or she would tell her mother.
>
> * * *
>
> [L.M.] did conclude by saying that Joey asked her not to tell her mother, or he would not buy her any more gifts."

Tammy Mitchell did not testify. After interviewing L.M., Hyland said, she spoke with the defendant, who read aloud the statement previously reduced to writing by De-

tective Janowiak and acknowledged that what he had read was what had occurred.

The defendant presented no evidence.

We turn initially to those matters the State presents for review that were determined by the appellate court in what it has designated as part II of its opinion. There the appellate court examined the defendant's claim that the circuit court had erred for three reasons in allowing Colleen Hyland to testify concerning out-of-court statements made both by L.M. and by her mother. Defendant made no claim that the testimony of Detective Janowiak concerning L.M.'s statements to the detective was improperly admitted.

As the first of these three reasons, defendant urged that the circuit court committed reversible error by failing to conduct a hearing, as mandated by section 115—10(b)(1) (Ill. Rev. Stat. 1989, ch. 38, par. 115—10(b)(1)), to determine that the time, content, and circumstances of L.M.'s statement to Hyland provided sufficient safeguards of reliability. The appellate court concluded that the circuit court's failure to conduct such a hearing was error, compounded by the fact that L.M.'s testimony was ambiguous, inconsistent and contradictory in a case in which credibility of the witnesses and reliability of their testimony was particularly important.

Section 115—10 provides in relevant part:

"(a) In a prosecution for a sexual act perpetrated upon a child under the age of 13, including but not limited to prosecutions for violations of Sections 12—13 through 12—16 of the Criminal Code of 1961, the following evidence shall be admitted as an exception to the hearsay rule:

(1) testimony by such child of an out of court statement made by such child that he or she complained of such act to another; and

(2) testimony of an out of court statement made by such child describing any complaint of such act or matter

or detail pertaining to any act which is an element of an offense which is the subject of a prosecution for a sexual act perpetrated upon a child.

(b) Such testimony shall only be admitted if:

(1) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

(2) The child either:

(A) Testifies at the proceeding; or

(B) Is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement." Ill. Rev. Stat. 1989, ch. 38, par. 115—10.

The State takes the position that the reliability of L.M.'s statements was "thoroughly examined" through the testimony of Detective Janowiak and that Hyland's testimony was merely cumulative evidence in light of the defendant's confession and the testimony of the other witnesses. As such, the State argues, any error was harmless. Asserting that the defendant does not contest the reliability of L.M.'s out-of-court statements made to the detective, the State maintains that the child's statements to the assistant State's Attorney were "substantially similar" and "nearly identical" to those made to the detective.

As the court indicated in *People v. Smith* (1991), 221 Ill. App. 3d 605, 607, the prosecution of cases involving sexual abuse of children always presents special problems of proof, the most obvious one being that the only witness to such an offense is often a young child who may be unable to testify adequately about what has happened. The complaints of youthful victims become more credible, more reliable, and better understandable when supported by the testimony of adults corroborating them. (*People v. Branch* (1987), 158 Ill. App. 3d 338, 341.) By means of section 115—10 the legislature has provided for the admission into evidence of out-of-court

statements of children alleged to have been victims of sexual abuse. (*Smith*, 221 Ill. App. 3d at 607.) Of necessity, however, the legislature has incorporated within section 115—10 a measure to protect against the admission of unreliable evidence, namely, the requirement of a finding by the court in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability. It is error in a jury trial to admit into evidence, pursuant to section 115—10, testimony about a child's out-of-court statement without such a hearing.

Although the State maintains that the reliability of L.M.'s statements was thoroughly examined through the testimony of Detective Janowiak, the record reveals that most of the argument heard outside the presence of the jury concerning the detective's testimony had to do with the application of section 115—10.1 (Ill. Rev. Stat. 1989, ch. 38, par. 115—10.1), treating the admissibility of prior inconsistent statements. Virtually no argument was directed to the time, content, and circumstances of L.M.'s statement to Detective Janowiak, no testimony of any kind was heard by the circuit court concerning these statements prior to the submission of the detective's testimony about them to the jury, and no finding was made by the court that the time, content, and circumstances of the statement of L.M. to Detective Janowiak provide sufficient safeguards of reliability. Although the defendant made no claim before the appellate court that the circuit court erred in allowing Detective Janowiak to testify concerning L.M.'s out-of-court statements to him, it cannot be said that their reliability was thoroughly examined or, in fact, effectively examined at all.

Nor does the fact that the detective testified before the jury about some facts related to the time, content, and circumstances of these statements assure their reliability. The time for determining the reliability of such

statements is prior to their submission to the jury. Defense counsel would be justifiably reluctant to explore fully facts relating to reliability for the first time in front of the jury.

Here the record neither establishes the reliability of the statements of L.M. about which Colleen Hyland testified nor provides a basis from which one may infer that these statements are reliable. Hyland's testimony about L.M.'s statements to her not only buttressed substantially Detective Janowiak's testimony but also lent great credence to the child's testimony, which was marked throughout, for whatever reason, by inconsistency and contradiction. Despite the State's assertions to the contrary, Hyland's testimony about L.M.'s statements to her was highly prejudicial to the defendant.

As the second of the three reasons advanced as error to the appellate court concerning Colleen Hyland's testimony, defendant addressed the failure of the circuit court to instruct the jury as required by section 115—10(c) (Ill. Rev. Stat. 1989, ch. 38, par. 115—10(c)), which provides as follows:

> "If a statement is admitted pursuant to this Section, the court shall instruct the jury that it is for the jury to determine the weight and credibility to be given the statement and that, in making the determination, it shall consider the age and maturity of the child, the nature of the statement, the circumstances under which the statement was made, and any other relevant factor."

The State argued to the appellate court, although it does not do so here, that the circuit court gave an instruction similar to that required by section 115—10(c) and that the jury was thus advised sufficiently in this regard. The appellate court concluded that the instruction given by the State did not specifically direct the jury to consider the age and maturity of the witness or the nature of the statement and that the failure to instruct the jury with

respect to the hearsay statements made by L.M. to others deprived defendant of a fair trial. This error, the appellate court determined, was plain error requiring reversal of the judgment and remand for a new trial.

The State contends here that the application of the doctrine of plain error was unwarranted because the evidence is not close. It argues that the defendant's confession, together with L.M.'s statements to Detective Janowiak, weigh heavily in favor of a guilty verdict. Our Rule 615(a) (134 Ill. 2d R. 615(a)) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." In criminal cases the criterion for the application of the rule regarding plain error is whether the evidence is closely balanced or the error is of such magnitude that the commission of it denies the accused a fair and impartial trial or sentencing hearing. (*People v. Young* (1989), 128 Ill. 2d 1, 47.) In view of the highly prejudicial testimony of Colleen Hyland concerning L.M.'s statements to her, which, as we have said, was improperly admitted into evidence without a hearing to determine the reliability of these statements, taken together with the serious contradictions in the testimony of L.M. herself at trial, we conclude that the evidence here is sufficiently close that the failure to instruct the jury as required by section 115—10(c) constitutes plain error. Our examination of the record discloses no jury instruction specifically addressing the jury's determination of the weight and credibility to be given the child's statement or the jury's consideration of the age and maturity of the child, the nature of the statement, or the circumstances under which the statement was made. Because the reliability of the hearsay statements of L.M. about which Hyland testified was not established, as required by section 115—10(b)(1), the need for the instruction mandated by section 115—10(c) was, if anything, greater

than it would have been had there been compliance with the provisions of section 115—10(b)(1).

As the third of the three reasons urged as error by the defendant before the appellate court with regard to Colleen Hyland's testimony, he contended successfully that this witness' testimony concerning the repetition by L.M.'s mother of L.M.'s statements constituted inadmissible double hearsay amounting to plain error. The State maintains here that any error was harmless because this testimony was merely cumulative, given that of Detective Janowiak and the admission of the defendant. Whether there are circumstances under which section 115—10 permits the admission into evidence of double hearsay we need not decide because the failure to determine the reliability of the statements of L.M. to either Colleen Hyland or Tammy Mitchell rendered the testimony inadmissible. Here, as we have said, the record does not otherwise establish the reliability of L.M.'s statements. We must disagree with the State that this testimony was merely cumulative. Like Hyland's testimony about L.M.'s statements to her, Hyland's testimony about Tammy Mitchell's repetition of L.M.'s statements to her reinforced the testimony of Detective Janowiak and lent considerable credence to L.M.'s testimony at trial, noteworthy for its contradictions. This testimony was particularly prejudicial to the defendant where Tammy Mitchell did not testify, where Detective Janowiak testified about Tammy Mitchell's concurrence that "something" had happened, and where the State elicited from L.M. that her mother had told her not to tell what had really happened.

For the foregoing reasons we conclude that justice requires that the defendant receive a new trial affording the protections granted him in section 115—10. Accordingly, we affirm the judgment of the appellate court re-

versing the judgment of the circuit court and remanding the cause for a new trial.

In what is designated as part I of its opinion, the appellate court addressed the defendant's contention, made in reliance upon *Batson* and the 1970 Illinois Constitution, article I, section 2 (Ill. Const. 1970, art. I, §2), that the State had systematically excluded males from the jury in violation of his right to equal protection of the law. At the conclusion of its examination of this contention, which it endorsed, the appellate court stated,

> "Since this case must be reversed and remanded for a new trial upon the bases set forth in part II of this opinion, the procedure to be followed upon retrial, should similar circumstances eventuate, is that outlined in *Batson* and in *People v. Hope* (1990), 137 Ill. 2d 430, 460-61, 560 N.E.2d 849 (*Hope*), a procedure again approved in *People v. Hope* (1992), 147 Ill. 2d 315, 318." (228 Ill. App. 3d at 929.)

We note that the directive in part I of the opinion is essentially advisory and speculative. Constitutional questions will not be considered if the cause can be determined on other grounds. (*People v. Dixon* (1963), 28 Ill. 2d 122, 125.) Because this cause can be determined on other grounds, it is unnecessary for us to consider the constitutional question presented here, and we decline to do so, particularly where the question is presented in a merely advisory context concerning circumstances that may not develop upon retrial. The appellate court, likewise, ought not to have reached this question unnecessary to its disposition upon review and to have issued an advisory directive with respect to it concerning events that may never occur. Therefore, we grant the motion of the State, advanced upon oral argument, to vacate that part of the judgment of the appellate court, set forth in part I of its opinion, prescribing the procedure to be fol-

lowed upon retrial in the event of a motion for a *Batson* hearing premised upon gender-based exclusion of jurors.

For the reasons stated, the judgment of the appellate court is affirmed in part and vacated in part, the judgment of the circuit court is reversed, and the cause is remanded to the circuit court.

*Appellate court affirmed in part*
*and vacated in part;*
*circuit court reversed;*
*cause remanded.*