# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *100 Lake, LLC v. Novak*, 2012 IL App (2d) 110708

---

| | |
|---|---|
| Appellate Court Caption | 100 LAKE, LLC, Plaintiffs-Appellants, v. JOHN LOTUS NOVAK, County Treasurer and *ex officio* County Collector, Defendant (The Board of Education of Elgin Community College District No. 509, Intervenor-Appellee).–101 OGDEN AVENUE PARTNERS, Plaintiffs-Appellants, v. JOHN LOTUS NOVAK, County Treasurer and *ex officio* County Collector, Defendant (The Board of Education of Elgin Community College District No. 509, Intervenor-Appellee). |
| District & No. | Second District<br>Docket Nos. 2-11-0708, 2-11-0709 cons. |
| Filed | June 22, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiffs' tax objection complaints alleging that bonds issued by a community college district were not issued at the lowest possible interest rates were properly rejected by the trial court because there is no statutory mandate that bonds authorized under the Public Community College Act be issued at the lowest interest rates possible and the bonds at issue did not exceed the maximum rate of 9% specified in the Bond Authorization Act. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, Nos. 05-T-06, 06-T-01; the Hon. Thomas C. Dudgeon, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Evan B. Karnes II, John A. Powers, and Everardo Martinez, all of Karnes Law, Chtrd., of Chicago, for appellants. |
| | David T.B. Audley and James P. Sullivan, both of Chapman & Cutler, LLP, of Chicago, for appellee. |
| Panel | JUSTICE BOWMAN delivered the judgment of the court, with opinion. Justices Schostok and Hudson concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiffs, 100 Lake, LLC, and 101 Ogden Avenue Partners, filed tax objection complaints against defendant, John Lotus Novak, county treasurer and *ex officio* county collector, for tax years 2004 and 2005. Relevant to this appeal, plaintiffs objected to general obligation bonds issued by the Board of Education of Elgin Community College District No. 509 (the District), on the basis of the interest rates. According to plaintiffs, the District was obligated to issue the bonds at the lowest possible interest rates. The District intervened as a defendant and moved for summary judgment, arguing that the bonds were issued at interest rates within the statutory limit. The trial court granted summary judgment in favor of the District and included language pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010). Plaintiffs appeal, and we affirm.

¶ 2                                    I. BACKGROUND

¶ 3    The District requested authority to issue $41 million in bonds to complete a number of building projects, among other things. The electors of the District approved the proposition on April 3, 2001, and the District issued bonds in the amount of $13 million on June 15, 2003, and in the amount of $8 million on December 15, 2003. Plaintiffs objected to these bonds, arguing that they were not issued at the lowest possible interest rates.

¶ 4    In particular, plaintiffs argued that, because the District had issued the June 2003 bonds at an interest rate not exceeding 7%, the bonds sold for "$14,225,572.40, which was at a premium of $1,225,572.40 in excess" of the $13 million that the District requested and that the voters approved. Likewise, plaintiffs argued that, because the District issued the December 2003 bonds at an interest rate of 9%, the bonds sold for $9,358,536.50, which was at a premium of $1,358,536.50 in excess of the $8 million that the District requested and that the voters approved.

-2-

¶ 5 Plaintiffs framed the issue as whether the District was authorized by any applicable statute to issue the bonds at interest rates that were more than the lowest interest rates possible. In support of their argument that the District was obligated to issue bonds at the lowest interest rates possible, plaintiffs relied on section 3 of the Registered Bond Act, entitled "Findings," which states that "[i]t is in the best interests of the citizens of this State that bonds or other evidence of indebtedness of public corporations be issuable in registered form to be sold at the lowest interest rate possible." 30 ILCS 310/3(b) (West 2002). According to plaintiffs, the bonds were not issued at the lowest interest rates possible but instead were intentionally issued at artificially high interest rates to generate bids in excess of the par value of the bonds, which resulted in a total bond premium of $2,584,108.90 ($1,225,572.40 + $1,358,536.50).

¶ 6 In addition to citing the "Findings" section of the Registered Bond Act, plaintiffs supplemented their position with the "Findings" section of the Local Government Debt Reform Act, which provides:

"The General Assembly finds: (a) There have been many and important changes in the market for and practices with respect to the issuance of bonds of local governmental units in recent years.

(b) Various provisions of the Illinois law are inconsistent and outdated.

(c) Many of these provisions result in additional costs for the citizens of the State of Illinois residing in local governmental units because of the sale and issuance of bonds at higher rates than would otherwise be necessary." 30 ILCS 350/2 (West 2002).

Plaintiffs maintained that the District violated its fiduciary duty to taxpayers by not issuing the bonds at the lowest interest rates possible.

¶ 7 The District moved for summary judgment. According to the District, the relevant statutes authorized the rates at which it issued the bonds, and plaintiffs could point to no statutory violation. The District relied on three statutes, beginning with section 10 of the Local Government Debt Reform Act:

"Bonds authorized by applicable law may *** bear interest payable at such intervals and at such rate or rates as authorized under applicable law, *** all as the governing body shall determine." 30 ILCS 350/10 (West 2002).

Second, the District cited section 3A-1 of the Public Community College Act:

"Any community college district may borrow money for the purpose of building, equipping, altering or repairing community college buildings *** and issue its negotiable coupon bonds therefor *** and bearing interest at a rate not to exceed the maximum rate authorized by the Bond Authorization Act ***." 110 ILCS 805/3A-1 (West 2002).

Third, the District relied on section 2 of the Bond Authorization Act:

"Notwithstanding the provisions of any other law to the contrary, any public corporation[1] may agree or contract to pay interest on bonds *** at an interest rate or rates not exceeding the greater of 9% per annum *** at the time the contract is made for

---

[1]Public corporations include school districts. See 30 ILCS 305/1(a) (West 2002).

the sale of the bonds ***." 30 ILCS 305/2 (West 2002).

The District argued that these provisions gave it the right to issue the bonds at whatever interest rate it chose, including at a premium, so long as it did not exceed the 9% ceiling of the Bond Authorization Act. Arguing that plaintiffs could not cite a statutory violation regarding its issuance of the bonds, the District concluded that it could not have violated any fiduciary duty to taxpayers.

¶ 8        On February 10, 2011, the trial court issued a written memorandum opinion, granting summary judgment in favor of the District. The court reasoned as follows. When reading the Local Government Debt Reform Act and the Bond Authorization Act together, the District has the authority to issue bonds at interest rates of 9%, meaning that the bonds issued were "not on their face, illegal." However, the question in this case was whether the District had an obligation to set the interest rates on these bonds at the lowest rates possible given the language in the "Findings" sections of the Registered Bond Act and the Local Government Debt Reform Act. To read the "Findings" sections in the Registered Bond Act and the Local Government Debt Reform Act as substantive law would create an irreconcilable conflict regarding the issuance of bonds by public corporations such as the District. According to the court, "[a]ccepting the [plaintiffs'] interpretation would require this court to hold, on one hand, that the legislature intended public corporations to issue bonds at the lowest interest rate possible and yet negate that policy on the other hand by allowing those same public corporations to set interest rates at whatever rate they chose, limited only by a 9% cap." The court rejected plaintiffs' interpretation, noting that legislative findings do not have the force of substantive law and are used only to resolve ambiguities, not to create them. Moreover, the phrase "[n]otwithstanding the provisions of any other law to the contrary" contained in section 2 of the Bond Authorization Act negated the "Findings" section of the Registered Bond Act. Regarding a fiduciary duty, the court declined to find that one existed outside the duties already enumerated in the relevant statutes.

¶ 9        Plaintiffs moved to reconsider the trial court's decision. The court denied that motion, stating that the interplay of the statutes vested a fair amount of discretion in the District to issue the bonds at rates that it determined, so long as they did not exceed the 9% cap in the Bond Authorization Act. The court reiterated that the statutes were not ambiguous and that the "Findings" sections relied on by plaintiffs were not substantive law. Plaintiffs timely appealed.

¶ 10                                    II. ANALYSIS

¶ 11        Plaintiffs argue that the trial court erred by granting summary judgment in favor of the District. Summary judgment is proper if, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits on file demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Lazenby v. Mark's Construction, Inc.*, 236 Ill. 2d 83, 93 (2010). Our review of the trial court's grant of summary judgment is *de novo*. *Id.*

¶ 12        Our standard of review for issues of statutory construction is also *de novo*. *JPMorgan Chase Bank, N.A. v. Earth Foods, Inc.*, 238 Ill. 2d 455, 461 (2010). Our primary objective

in interpreting a statute is to ascertain and give effect to the legislature's intent. *Solon v. Midwest Medical Records Ass'n*, 236 Ill. 2d 433, 440 (2010). "The most reliable indicator of such intent is the language of the statute, which is to be given its plain and ordinary meaning." *Id.* In determining the plain meaning of the statute, we consider the statute in its entirety, the subject it addresses, and the legislature's apparent intent in enacting it. *Id.* "When the statutory language is clear and unambiguous, it must be applied as written, without resort to extrinsic aids of statutory construction." *Id.*

¶ 13 The Public Community College Act (110 ILCS 805/3A-1 *et seq.* (West 2002)) relates to the establishment, operation, and maintenance of public colleges (*Hedlund & Hanley, LLC v. Board of Trustees of Community College District No. 508*, 376 Ill. App. 3d 200, 206 (2007)), and community college districts operate under its authority (*Darnell v. Board of Trustees of Belleville Area College District No. 522*, 151 Ill. App. 3d 742, 746 (1987)). Public funding for community colleges under the Public Community College Act constitutes a complex legislative scheme whereby operating expenses of the various community colleges are to be paid from bonds, tax levies, and reimbursement from the State for student tuition and other fees. *Gocheff v. State Community College of East St. Louis*, 69 Ill. App. 3d 178, 182 (1979); see also *Dusthimer v. Board of Trustees of the University of Illinois*, 368 Ill. App. 3d 159, 163 (2006) (a community college board sets its own fiscal year and budget and selects its own basis of financing and system of accounting).

¶ 14 Section 3A-1 of the Public Community College Act states:

"*Any community college district may borrow money* for the purpose of building, equipping, altering or repairing community college buildings or purchasing or improving community college sites, \*\*\* *and issue its negotiable coupon bonds therefor* signed by the chairman and secretary of the board, in denominations of not less than $100 nor more than $5,000, payable at such place and at such time or times, not exceeding 20 years from date of issuance, as the board may prescribe, and *bearing interest at a rate not to exceed the maximum rate authorized by the Bond Authorization Act*, as amended at the time of the making of the contract, payable annually, semiannually or quarterly \*\*\*." (Emphases added.) 110 ILCS 805/3A-1 (West 2002).

As referenced in the Public Community College Act, the relevant section of the Bond Authorization Act states:

"*Notwithstanding the provisions of any other law to the contrary, any public corporation may agree or contract to pay interest on bonds* or other evidences of indebtedness and tax anticipation warrants issued pursuant to law *at an interest rate or rates not exceeding the greater of 9% per annum* or 125% of the rate for the most recent date shown in the 20 G.O. Bonds Index of average municipal bond yields as published in the most recent edition of The Bond Buyer, published in New York, New York \*\*\* at the time the contract is made for the sale of the bonds or other evidences of indebtedness or tax anticipation warrants." (Emphases added.) 30 ILCS 305/2 (West 2002).

¶ 15 Under the plain language of these two statutes, any community college district may fund building projects under section 3A-1 of the Public Community College Act by issuing bonds bearing interest at a rate not to exceed the maximum rate authorized by the Bond

Authorization Act. The maximum interest rate authorized by the Bond Authorization Act is 9%. In this case, the bonds were issued at interest rates of 7% and 9%, which do not violate the 9% ceiling set forth in the Bond Authorization Act. Nevertheless, plaintiffs make several arguments challenging the District's issuance of the bonds.

¶ 16    First, plaintiffs argue that the District must point to an express authorization in a statute allowing it to issue bonds at interest rates above the lowest interest rate possible. In making this argument, plaintiffs rely on *Best Bus Joint Venture v. Board of Education of the City of Chicago*, 288 Ill. App. 3d 770 (1997), where the board created a 2% local business preference for school bus services. Though the board argued that there was nothing in the School Code (105 ILCS 5/1-1 *et seq.* (West 1994)) that prohibited it from including a local preference when determining who was the lowest responsible bidder, the reviewing court stated that the appropriate question was whether there was anything in the School Code that allowed the board to give preferential treatment to local businesses. *Best Bus Joint Venture*, 288 Ill. App. 3d at 776. Because nothing in the School Code expressly authorized the board to create a local business preference, the court held that the 2% local business preference had no proper legislative authority and was thus unconstitutional. *Id.* at 779.

¶ 17    Unlike the situation in *Best Bus Joint Venture*, the District's express authorization for issuing bonds appears in section 3A-1 of the Public Community College Act. Section 3A-1 states that such bonds shall bear interest at a rate not to exceed the maximum rate authorized by the Bond Authorization Act, which is 9%. Here, the bonds complied with both the Public Community College Act and the Bond Authorization Act because the interest rates did not exceed the 9% ceiling. Other than not exceeding the maximum interest rate of 9%, no restriction regarding interest rates appears in the Public Community College Act or the Bond Authorization Act. Thus, this case is distinguishable from *Best Bus Joint Venture*, where there was no statutory basis for creating a local business preference. As stated, when issuing the bonds, the District complied with the maximum interest rate established by the Bond Authorization Act.

¶ 18    In a related argument, plaintiffs next argue that, in issuing the bonds at a "premium," the District "violated more than 130 years of public policy" by exacting a tax "in excess of what was needed." As evidence of this long-standing public policy, plaintiffs direct this court to a supreme court case decided in 1876, *Adams v. State*, 82 Ill. 132 (1876), which concerned a school district's issuance of bonds bearing interest at a rate not exceeding 10% per annum. In that case the court stated:

"This is all the authority given directors in the matter of borrowing money, and it would appear to be a limitation upon their action in issuing bonds, to sums of money actually received. No authority is given to issue bonds and place them upon the market to be sold for what they might bring, or for anything less than their par value. Without an enabling statute, it is apprehended they cannot thus issue and sell bonds, and should the directors make such disposition of them, they would clearly be liable, under the 77th section of the statute, for any loss the fund of the district might sustain." *Id.* at 133.

¶ 19    Unlike the District, which cites to the Public Community College Act and the Bond Authorization Act, plaintiffs rely on two other statutes, the Registered Bond Act and the

Local Government Debt Reform Act,[2] to support their position. According to plaintiffs, the reasoning in *Adams* is reflected in the Findings sections of those two statutes. Section 3 of the Registered Bond Act, entitled "Findings," provides:

> "(a) The Tax Equity and Fiscal Responsibility Act of 1982 requires that certain obligations issued by a state or political subdivision thereof, in order for the interest thereon to be exempt from federal income taxes, be issued in registered form; and
>
> (b) *It is in the best interests of the citizens of this State that bonds* or other evidences of indebtedness *of public corporations be issuable in registered form to be sold at the lowest interest rate possible*[.]" (Emphases added.) 30 ILCS 310/3(a), (b) (West 2002).

¶ 20    The "Findings" section of the Local Government Debt Reform Act provides:

> "The General Assembly finds: (a) There have been many and important changes in the market for and practices with respect to the issuance of bonds of local governmental units in recent years.
>
> (b) Various provisions of the Illinois law are inconsistent and outdated.
>
> (c) *Many of these provisions result in additional costs for the citizens of the State of Illinois residing in local governmental units because of the sale and issuance of bonds at higher rates than would otherwise be necessary*." (Emphasis added.) 30 ILCS 350/2 (West 2002).

¶ 21    Plaintiffs argue that the fact that the Bond Authorization Act sets an absolute numerical ceiling or maximum rate does not negate the Findings sections in the Registered Bond Act and the Local Government Debt Reform Act, which indicate that bonds should be sold at the lowest interest rate possible. In other words, plaintiffs assert that there is no conflict between the interest rate ceiling in section 2 of the Bond Authorization Act and the "Findings" sections of the Registered Bond Act and the Local Government Debt Reform Act.

¶ 22    Plaintiffs' arguments ignore the tenets of statutory construction. As previously mentioned, section 3A-1 of the Public Community College Act specifically states that any community college district may issue bonds bearing interest at a rate not to exceed the maximum rate authorized by the Bond Authorization Act. The section of the Bond Authorization Act that sets the maximum interest rate at 9% begins with the language "[n]otwithstanding the provisions of any other law to the contrary." Though plaintiffs argue that this language has no practical application, it is controlling.

¶ 23    In *Doe v. Hinsdale Township High School District 86*, 388 Ill. App. 3d 995, 1002 (2009), this court considered a section of the Code of Civil Procedure beginning with similar language: "[n]otwithstanding any other provision of law." (Internal quotation marks omitted.) In that case, the school district argued that the plaintiff's suit was barred by the Local

---

[2]The Registered Bond Act, the Local Government Debt Reform Act, and the Bond Authorization Act are all listed in the Omnibus Bonds Acts (5 ILCS 70/8(a) (West 2002)), under which governmental entities are given supplemental grants of power for the purpose of giving the governmental entities equal access to the municipal bond market. *Wood River Township v. Wood River Township Hospital*, 331 Ill. App. 3d 599, 601 (2002).

Governmental and Governmental Employees Tort Immunity Act. This court rejected that argument, holding that in using the above language the legislature clearly intended that particular section of the Code to control over other provisions of law, such as the Tort Immunity Act, which would otherwise bar the plaintiff's action. *Id.* In particular, this court stated:

> "To hold otherwise would render meaningless the phrase '[n]othwithstanding any other provision of law.' This is a result that we must avoid. [Citation.] Accordingly, based on the legislature's use of the unambiguous language '[n]otwithstanding any other provision of law,' we apply section 13-202.2 [of the Code] as written without resorting to other aids of construction." *Id.*

As in *Doe*, the plain language of the Bond Authorization Act, "[n]otwithstanding the provisions of any other law to the contrary," unambiguously states that it controls over other provisions of law. Consequently, it controls over the "Findings" sections of the Registered Bond Act and the Local Government Debt Reform Act, the provisions relied upon by plaintiffs.

¶ 24    Though this is reason enough to reject plaintiffs' position, given that the cardinal rule of statutory construction, to which all other rules are subordinate, is to ascertain and give effect to the intent of the legislature (*Collinsville Community Unit School District No. 10 v. Regional Board of School Trustees*, 218 Ill. 2d 175, 186 (2006)), other rules of statutory construction support this conclusion as well. For example, section 3A-1 of the Public Community College Act specifically incorporates the Bond Authorization Act as opposed to the Registered Bond Act and the Local Government Debt Reform Act. Thus, the Bond Authorization Act is the more specific statute and thus controls here. See *People v. Singleton*, 103 Ill. 2d 339, 345 (1984) (settled principles of statutory construction call for the specific to control over the general).

¶ 25    In addition, the "Findings" sections that plaintiffs rely on set forth goals and objectives but do not mandate that interest rates for bonds be set at the lowest possible rates. On this point, *Governor's Office of Consumer Services v. Illinois Commerce Comm'n*, 220 Ill. App. 3d 68 (1991), is instructive. In that case, the court found that the prefatory language in the statute at issue, which was entitled "Findings and Intent," stated general reasons for enactment of the legislation and listed major goals and objectives but did not mandate the adoption of a certain type of cost study or require a certain time period. *Id.* at 74. The court stated:

> "Prefatory language *** generally is not regarded as being an operative part of statutory enactments. The function of the preamble of a statute is to supply reasons and explanations for the legislative enactments. The preamble does not confer powers or determine rights. [Citation.] A declaration of policy contained in a statute is, like a preamble, not a part of the substantive portions of the act. Such provisions are available for clarification of ambiguous substantive portions of the act, but may not be used to create ambiguity in other substantive provisions." (Internal quotation marks omitted.) *Id.*

See also *Citizens Utility Board v. Illinois Commerce Comm'n*, 166 Ill. 2d 111, 131 (1995) (holding that the "equity" language the Commission relied on within the preamble of the Act

was not a substantive part of the Act; though the preamble contained numerous goals and objectives for utility regulation, it did not confer powers). The same rationale applies to the "Findings" sections of the Registered Bond Act and the Local Government Debt Reform Act. No language in those statutes mandates that bonds authorized under the Public Community College Act be issued at the lowest interest rates possible.

¶ 26 Plaintiffs next argue that the trial court "essentially ruled that the [9%] maximum interest rate contained in section 2 of the Bond Authorization Act and the finding in section 3(b) of the Registered Bond Act are hopelessly in conflict with each other." We disagree that the trial court's ruling reflects such a conclusion. On the contrary, the court rejected plaintiffs' attempt to elevate the "Findings" section of the Registered Bond Act over the Public Community College Act's express authority to issue bonds at the 9% interest-rate cap identified in the Bond Authorization Act. More important, section 2 of the Bond Authorization Act, which sets the 9% cap on interest rates, is unambiguous, meaning that we need not consider the legislative debates regarding that statute, despite plaintiffs' invitation to do so. See *Dusthimer*, 368 Ill. App. 3d at 167 (the court declined the Board's invitation to consider an external aid of construction–the legislative history–where the meaning of the statutory language at issue was clear on its face).

¶ 27 Next, plaintiffs argue that the District owed a fiduciary duty to its taxpayers, which it breached by issuing the bonds above the lowest interest rates possible. We reject plaintiffs' assertion that the "Findings" sections in the Registered Bond Act and the Local Government Debt Reform Act create a fiduciary duty between the District and the taxpayers. As previously mentioned, those provisions are not controlling and do not mandate that the District issue bonds at the lowest interest rates possible. Because the bonds issued in this case did not exceed the maximum interest rate of 9% specified in the Bond Authorization Act, plaintiffs have not shown how the District owed such a fiduciary duty much less violated one.

¶ 28 Finally, plaintiffs argue that the District violated section 3A-2 of the Public Community College Act by using the "premiums" it received to increase the scope of the project or to extend the project. We agree with the District that this issue was not raised before the trial court and is therefore forfeited. See *Jones v. Chicago HMO Ltd. of Illinois*, 191 Ill. 2d 278, 306 (2000) (issues raised for the first time on appeal are forfeited).

¶ 29                                  III. CONCLUSION
¶ 30 For the reasons stated, we affirm the judgment of the Du Page County circuit court awarding summary judgment in favor of the District.

¶ 31 Affirmed.